E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
HAOXIAOHAN CAI (Cal. Bar No. 331131)
Assistant United States Attorney
General Crimes Section
      1200 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-0762
      Facsimile: (213) 894-0141
      E-mail:    Haoxiaohan.Cai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-217-MCS |
|---|---|
| Plaintiff, | GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND SENTENCING POSITION FOR DEFENDANT CYNTHIA ANN HERNANDEZ; EXHIBIT A |
| v. | |
| CYNTHIA ANN HERNANDEZ, aka "Cynthia Roberts," | |
| Defendant. | Hearing Date: June 26, 2023<br>Hearing Time: 10:00 a.m.<br>Location:    Courtroom of the<br>             Hon. Mark C. Scarsi |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Haoxiaohan Cai, hereby files its Objections to the Presentence Investigation Report ("PSR") and Sentencing Position for Defendant Cynthia Ann Hernandez.

The government's Objection and Sentencing Position is based upon the attached memorandum of points and authorities, Exhibit A, a Financial Disclosure Statement from Defendant, which the government requests be filed under seal, the files and records in this case, and

such further evidence and argument as the Court may permit.  The government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

Dated: June 12, 2023                    Respectfully submitted,

                                        E. MARTIN ESTRADA
                                        United States Attorney

                                        MACK E. JENKINS
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                        _____/s/_____
                                        HAOXIAOHAN CAI
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES...............................................iii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION...................................................1

II.   Background....................................................2

      A.    Statement of Facts......................................2

      B.    Defendant's Plea Agreement..............................4

      C.    Defendant Has Not Provided the Required Financial
            Disclosure Statement to the USAO or Provided Any
            Information on The Whereabouts of the $515,138 She
            Stole...................................................5

III.  SENTENCING GUIDELINES CALCULATION AND OBJECTION TO THE PSR.....5

      A.    USPO's Sentencing Guidelines Calculation................5

      B.    The Government's Objections to the PSR with Respect to
            Offense Level Calculation...............................6

      C.    USPO's Assessment of Defendant's Ability To Pay And
            Recommendation on Restitution and Fine..................7

      D.    The Government's Objections to the PSR with Respect to
            Restitution And Ability To Pay..........................8

IV.   SENTENCING RECOMMENDATION.....................................9

      A.    Nature and Circumstances of the Offense.................9

      B.    History and Characteristics of Defendant...............10

      C.    Need for the Sentence to Reflect the Offenses'
            Seriousness, Promote Respect for the Law, Provide Just
            Punishment, Afford Adequate Deterrence, and Protect
            the Public.............................................11

      D.    Need to Avoid Unwarranted Disparities..................11

V.    ORDER FOR IMMEDIATE PAYMENT OF RESTITUTION....................12

      A.    Payment of Restitution is the Law......................12

      B.    The Defendant Has Not Proven An Inability To Pay And
            Should Be Required To Make A Full and Immediate

**<u>TABLE OF CONTENTS (CONTINUED)</u>**

<u>DESCRIPTION</u>                                                              <u>PAGE</u>

Payment.................................................13

1.   The MVRA Requires Full and Immediate Restitution
     Unless the Defendant Bears the Burden of Showing
     Inability to Pay...................................13

2.   Defendant Is Presumed To Be In Possession of Her
     Criminal Proceeds..................................14

C.   If the Defendant Demonstrates an Inability to Pay, The
     Court Should Set a Payment Schedule......................15

D.   Government Request for Restitution Order.................16

VI.  CONCLUSION.................................................17

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

Cases

Gall v. United States,
  552 U.S. 38 (2007) ...................................................... 11
United States v. Boyle,
  10 F.3d 485 (7th Cir. 1993) ............................................ 15
United States v. Gunning,
  339 F.3d 948 (9th Cir. 2003) ........................................... 16
United States v. Hawkins,
  392 F. Supp. 2d 757 (W.D. Va. 2005) .................................... 16
United States v. James,
  312 F. Supp. 2d 802 (E.D. Va. 2004) ................................... 17
United States v. Martin,
  278 F.3d 988 (9th Cir. 2002) ........................................... 13
United States v. Olson,
  104 F.3d 1234 (10th Cir. 1997) ......................................... 15
United States v. Reaume,
  338 F.3d 577 (6th Cir. 2003) ........................................... 13
United States v. Ross,
  310 Fed. Appx. 160 (9th Cir. 2009) .................................... 13
United States v. Stouffer,
  986 F.2d 916 (5th Cir. 1993) ........................................... 12
United States v. Treadwell,
  593 F.3d 990 (9th Cir. 2010) ........................................... 11
United States v. Voight,
  89 F.3d 1050 (3rd Cir. 1996) ........................................... 15
United States v. Wycoff,
  839 F.3d 581 (7th Cir.2016) ............................................ 16
United States v. Yousef,
  327 F.3d 56 (2nd Cir. 2003) ............................................ 14

Statutes

18 U.S.C. § 1028A............................................................ 4
18 U.S.C. § 1029(a)(5)................................................... 1, 4
18 U.S.C. § 1341........................................................ 1, 4
18 U.S.C. § 3553(a)................................................. 2, 3, 9
18 U.S.C. § 3553(a)(1).................................................. 9, 10
18 U.S.C. § 3553(a)(2).................................................... 11
18 U.S.C. § 3571(b)........................................................ 9
18 U.S.C. § 3572(d)....................................................... 16
18 U.S.C. § 3664(a)....................................................... 13
18 U.S.C. § 3664(d)(3).................................................... 14
18 U.S.C. § 3664(f)(3)(B)................................................. 16
18 U.S.C. § 3664(k)....................................................... 17
18 U.S.C. § 3613(a)....................................................... 17

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                                                    PAGE

31 U.S.C.§ 3716.................................................................17

Rules

U.S.S.G. § 3B1.1(c) ............................................................ 6
U.S.S.G. § 2B1.1(b)(11)......................................................1, 6
U.S.S.G. § 3B1.1.............................................................2, 6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3       Between June 2020 and August 2020, defendant Cynthia Ann

4   Hernandez -- a former "eligibility worker" for Kern County,

5   California -- orchestrated a lucrative scheme to defraud the

6   California Employment Development Department ("EDD") of approximately

7   $515,138 of COVID-19 unemployment benefits.  Defendant did so by

8   fabricating applications for inmates who were incarcerated and

9   clearly ineligible for any such benefits by obtaining their personal

10  identifying information and submitting applications attesting that

11  they were unemployed or unable to work due to a COVID-19 related

12  reason.  After EDD issued the ill-begotten benefits, defendant

13  withdrew the benefits from ATMs and keep a portion of the proceeds.

14  For her conduct, defendant was charged in a seven-count indictment

15  for mail fraud, in violation of 18 U.S.C. § 1341 (Counts 1-4), access

16  device fraud in excess of $1,000, in violation of 18 U.S.C.

17  § 1029(a)(5) (Count 5); and aggravated identity theft, in violation

18  of 18 U.S.C. $1028A(a)(1) (Counts 6-7).  Defendant pleaded guilty

19  pursuant to a plea agreement to Counts one and five.  (Dkt. 24.)

20      In its Presentence Report ("PSR"), the United States Probation

21  Office ("USPO") calculated a total offense level of 20 and a Criminal

22  History Category of I, which the USPO concluded results in an

23  advisory Guidelines range of 33 to 41 months' imprisonment.  (PSR

24  ¶ 134.)  The government agrees with the ultimate offense level and

25  resulting Guidelines range but disagrees and respectfully objects to

26  the USPO's offense level calculation in two respects.  First, the

27  government does not believe that the two-point enhancement under

28  U.S.S.G. § 2B1.1(b)(11), for unauthorized use of a means of

1  identification of another person, applies.  Second, the government

2  believes that a four, rather than two-point enhancement under

3  U.S.S.G. § 3B1.1 for aggravated role should apply.

4       The government recommends that defendant be sentenced to 37

5  months, the mid-point of the range, followed by a one-year term of

6  supervised release.  The government also seeks an order of immediate

7  and full restitution of $515,138.  Such a sentence is sufficient, but

8  not greater than necessary, to achieve the purposes set forth in 18

9  U.S.C. § 3553(a).

10 **II.  Background**

11      **A.  Statement of Facts**

12      Defendant admitted to the following facts during the change of

13 plea hearing on January 23, 2023:

14      Between June 2020 and September 2020, defendant executed a

15 scheme to defraud the California Employment Development Department

16 ("EDD") that caused EDD and the United States Treasury a loss of

17 approximately $515,138. (Plea Agreement ¶ 13.) Defendant, who is

18 married to an individual incarcerated at a state prison facility in

19 Corcoran, California, worked with her husband and others incarcerated

20 at various California prisons to place false applications for COVID-

21 19 related unemployment benefits, known as Unemployment Insurance,

22 ("UI") administered by the EDD.  (PSR ¶ 38-39).

23      Defendant, as the non-incarcerated individual in the scheme,

24 collected inmates' personal identifying information ("PII") and then

25 filed applications with EDD stating that the inmate had a qualifying

26 occupational status and a COVID-19 related reason for being out work.

27 (Plea Agreement ¶ 13.)  For example, defendant used the PII of inmate

28 M.G. and submitted an application stating that M.G. had primary

responsibility caring for a child or person whose school or care facility was closed as a direct result of COVID-19, precluding his ability to work, and that M.G. was available for full-time work in his usual occupation.  (Id.)  As defendant knew, this was not true, since M.G. was in prison.  Defendant used her own email and mailing address on the false applications. (PSR ¶ 27.)  When EDD issued the fraudulently-obtained UI benefits, defendant received Bank of America debit cards at her home address, and she personally took the debit cards to make withdrawals at various ATMs.  (PSR ¶¶ 30-31, 36.)

In the span of three months, defendant submitted 29 fraudulent UI applications to EDD on behalf of 29 inmates.  Defendant solicited inmates for the opportunity to use their PII for the scheme.  (PSR ¶ 39.)  As one example, defendant had a conversation with one inmate who stated that someone else was going to charge him half of the UI benefits, and defendant interjected that was too high for the inmate to be charged, and then told the inmate, "I'll do it for you."  (PSR ¶ 39(b).) Defendant would then keep a portion of the proceeds for herself or arrange to send the UI benefits to the inmate or the inmate's family. (PSR ¶ 39.)

Defendant knew what she was doing was wrong and tried to hide her conduct.  She attempted to minimize overt discussion of the scheme on her recorded calls with inmates. (PSR ¶ 38(d) (stating to her husband, "Well, I mean, being that it's my address being used, I feel like it's more of a risk, you know."); PSR ¶ 39(h) (replying to another inmate who inquired about getting "13 G's from unemployment," that "I don't really want to talk about that on here.")) Defendant's phone was seized by the investigating agency, the Office of Inspector General at the United States Department of Labor,  who recovered

3

1  photos that were deleted, including photos of PII for inmates, a

2  notebook page with names and PII, and photos of the EDD Online UI

3  application process for several inmates.  (PSR ¶ 35.)

4      **B.   Defendant's Plea Agreement**

5          On January 23, 2023, defendant pleaded guilty pursuant to a plea

6  agreement to counts one and five, which charge her with one count of

7  mail fraud in violation of 18 U.S.C. § 1341, and access device fraud

8  in excess of § 1,000, in violation of 18 U.S.C. § 1029(a)(5).  (Plea

9  Agreement ¶ 2(a).)  The government agreed to dismiss all other counts

10  of the indictment at sentencing. (Plea Agreement ¶ 3(c).)  The other

11  counts included two counts of access device fraud in violation of 18

12  U.S.C. § 1028A, which are crimes punishable by a two-year mandatory

13  consecutive sentence.

14          In exchange, defendant agreed in her plea agreement that she

15  would "not recommend, argue for, or suggest in any way that the Court

16  should impose a sentence of less than 24 months of imprisonment on

17  counts one and five of the indictment."  (Plea Agreement ¶ 2(f).)

18          Defendant also agreed that she would be "required to pay full

19  restitution" to the victims of her crimes, which would be due

20  immediately upon sentencing.  (Plea Agreement ¶¶ 2(i), 9.)  She

21  further agreed that "the applicable amount of restitution is

22  approximately $515,138."  (Id.)  She also agreed she would be

23  obligated to complete a Financial Disclosure Statement and return the

24  same to the government within 30 of her entry of her plea – i.e., no

25  later than February 23, 2023.  (Plea Agreement ¶ 2(j).)  She also

26  agreed to the United States Attorney's Office inspecting and copying

27  all of her financial documents and information held by the USPO.

28  (Id. ¶ 2(l).)

1       **C.**    **Defendant Has Not Provided the Required Financial**
2                **Disclosure Statement to the USAO or Provided Any**
              **Information on The Whereabouts of the $515,138 She Stole**

3      Notwithstanding her agreement to complete and provide a
4  Financial Disclosure Statement to the USAO, defendant did not do so
5  by the February 23, 2023 deadline.  The defense asked for additional
6  time to put together the required disclosure, and to continue the
7  sentencing date from April 2023 to June 26, 2023, which the
8  government agreed to in a stipulation.  (Dkt. 29.)

9      The government received for the first time a copy of the
10  requested financial disclosure on the date of the instant filing.
11  The disclosure is attached as Exhibit A, and which the government has
12  requested be filed under seal.  The defendant's financial disclosure
13  does not account for defendant's receipt of $515,138 of fraudulent UI
14  benefits in 2020.  Nor does it reflect any outflows indicating that
15  defendant no longer possesses these funds.

16  **III. SENTENCING GUIDELINES CALCULATION AND OBJECTION TO THE PSR**

17      **A.**    **USPO's Sentencing Guidelines Calculation**

18      In the PSR, the USPO determined that defendant had a total
19  offense level of 20, based on the loss amount, acceptance of
20  responsibility, and certain other enhancements, including two
21  enhancements that the government objects to below.  (PSR ¶ 67.)
22  Based on this offense level and a criminal history category of I, the
23  UPSO determined that the advisory Guidelines range is 33 to 41
24  months, followed by a term of supervised release of one to three
25  years.  (PSR ¶¶ 134, 137.)

26
27
28

### B.   The Government's Objections to the PSR with Respect to Offense Level Calculation

The government agrees with the total offense level and Guidelines range calculated by the USPO, but reaches that result on the basis of different calculations.  Specifically, the government objects to two enhancements applied by the USPO.

One, the government objects to the USPO's recommendation of a two-level enhancement under U.S.S.G. § 2B1.1(b)(11).  (PSR ¶ 53.) The enhancement applies when, among other things, the offense involves "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification."  Id. § 2B1.1(b).  Although the government agrees that the defendant used the inmates' means of identification, there is no present evidence that defendant's use was "unauthorized."  The evidence shows that defendant worked directly with the inmates who appear to have consented to her use of their PII to defraud EDD.  As the USPO observed (PSR ¶ 54), the application note requires that the defendant uses a means of identification "without that individual's authorization."  U.S.S.G. § 2B1.1(b)(11), Application Note 10(C)(i) (emphasis added).  Thus, this enhancement does not apply.

Second, the government objects to the USPO's recommendation of a two-level enhancement for aggravated role under Section 3B1.1(c) (PSR ¶¶ 58-61), because the four-level enhancement under Section 3B1.1(a) should apply instead.  Section 3B1.1, subsection a, provides a four-level enhancement where "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," subsection b provides a three-level enhancement if the defendant was a manager or supervisor of, and subsection c

provides a two-level enhancement if the defendant was an organizer, leader, manager, or supervisor in a crime other than and subsections a or b.  The USPO recognized that defendant "was acting as an organizer or leader of the criminal scheme," and had "devised the plan to perpetuate the crime in the first place."  (PSR ¶ 61.) However, the USPO applied the two-level enhancement because it found it "unclear as to how many criminal participants there were involved in the scheme."  (Id.)  The USPO also noted that "[a]ccording to the case agent, it is unclear how many participants there were in the scheme altogether."  (PSR ¶ 23, n.1.)

The government believes that the four-level enhancement applies both because the criminal activity involved at least 30 people (defendant and the 29 inmates for whom she applied for UI benefits) and because it is otherwise extensive.  Defendant worked with at least 29 inmates, or co-schemers for whom she applied for UI benefits and withdrew money.  (PSR ¶ 13.)  The USPO's uncertainty about the total number of individuals involved seems to stem from a misunderstanding of the case agent's comments, which indicate that the defendant agreed that there were a minimum of 29 confirmed co-schemers, but that number may be under-representative of other co-schemers unknown to the investigating agency.

Based on the above, defendant should have a total offense level of 20 and a criminal history category of I, resulting in a Guidelines imprisonment range of 33 to 41 months.

### C. USPO's Assessment of Defendant's Ability To Pay And Recommendation on Restitution and Fine

As of the date of the original PSR, defendant did not provide required financial disclosures to the USPO, nor did she provide

7

supporting documents besides several years of tax returns, which
showed an adjusted gross income of approximately $20,000 in 2019, an
adjusted gross income of $3,500 in 2020, an adjusted gross income of
$36,254 in 2021, and an adjusted gross income of $3,194 in 2022. (PSR
¶¶ 125-26 "Hernandez's financial condition is unknown to the
Probation Officer, as she did not return the required financial
disclosures nor provide supporting documentation to the Probation
Officer.")  On the basis of this limited information, the USPO
concluded that defendant has no immediate ability to pay and
recommended a payment schedule consisting of nominal payments.  (PSR
¶¶ 131-132.)

The information in defendant's tax returns as recounted by the
USPO does not account for the $515,138 that defendant received as
part of the fraudulent scheme.  Defendant's tax returns are likely
unrepresentative of her true financial state: the tax returns for
2020 disclose only $3,500 in adjusted gross income, which is far
short of the hundreds of thousands of dollars in fraudulent UI
benefits that defendant withdrew from Bank of America ATMS that year.
Nor do they show how or if defendant ever divested herself of her
criminal earnings.

### D.   The Government's Objections to the PSR with Respect to Restitution And Ability To Pay

As discussed <u>supra</u>, USPO's conclusion regarding defendant's
ability to pay, and its restitution recommendation, is based on
defendant's failure to timely provide the financial affidavit
required by statute, as well as her failure to provide an accurate

8

1   accounting of her criminal proceeds -- which must be presumed to
2   still be in defendant's possession unless proven otherwise by
3   defendant.

4        Accordingly, as defendant has failed to provide evidence to the
5   contrary, the government objects and contends that defendant is
6   presumed in possession of the $515,138 in criminal proceeds and has
7   present ability to pay.[1]

8   **IV.   SENTENCING RECOMMENDATION**

9        The government recommends that the Court sentence defendant to
10  37 months' imprisonment, i.e., a mid-range sentence, followed by a
11  three-year period of supervised release; and a $200 special
12  assessment.[2]  (PSR ¶¶ 130).   The government further requests the
13  court order full and immediate restitution of the loss amount,
14  $515,138. Such a sentence is sufficient, but not greater than
15  necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

16       **A.   Nature and Circumstances of the Offense**

17       The nature and circumstances of defendant's offense supports a
18  sentence of 37 months' imprisonment.  18 U.S.C. § 3553(a)(1).
19  Defendant orchestrated a sophisticated scheme that deprived the state
20  of over five hundred thousand dollars meant to provide relief for
21  vulnerable taxpayers who were unable to work due to the COVID-19
22

23       [1] It is the government's understanding that the USPO may make
    additional recommendations regarding the defendant's ability to pay
24  in a amended PSR, which will be filed subsequent to the deadline on
    the government's sentencing position.   The government reserves the
25  right to submit an additional filing to address or respond to any
    issues raised by the amended PSR.
26
27       [2] At this time, defendant has not provided a clear picture of
    her financial status for the government to take a position on the
    imposition of a fine.  At sentencing, the government reserves the
28  right to request a fine be imposed in accordance with 18 U.S.C.
    § 3571(b).

pandemic.  She did so by applying for UI benefits for people who were plainly ineligible, and did so for her own financial gain.

**B.  History and Characteristics of Defendant**

Defendant's history and characteristics also warrant the mid-range sentence.  <u>See</u> 18 U.S.C. § 3553(a)(1).  Defendant committed a serious fraud, for profit, and attempted to avoid detection by asking her co-schemers not to talk openly about the fraud on jail calls and by deleting documents from her phone associated with the fraudulent UI benefits applications.

More troublingly, the PSR reports that in 2019, the year before her criminal conduct, defendant worked as an "eligibility worker" for Kern County. (PSR ¶ 121.)  Eligibility workers are responsible for verifying and evaluating information from applicants regarding eligibility for public assistance programs.[3]  There is no question that defendant understood the requirements for COVID-19 UI benefits, and it appears she was able to leverage her past work as an eligibility worker into a scheme to monetize UI benefits for plainly ineligible persons.  Moreover, defendant admitted to preparing taxes for others even though she has no license to do so. (PSR ¶ 117.)

Given the severity of defendant's conduct, a mid-range sentence is appropriate.

---

[3] <u>See</u>
https://itsapps.kerncounty.com/Iframed/CMS/ExHelpTempEmployment/Webjobs/JS8038.pdf (specifying that someone with the position will "[l]earn[] and appl[y] techniques and methods of interactive interviewing and fact gathering to obtain, verify and evaluate information from applicants and recipients regarding initial and continuing eligibility for public assistance programs.")

1
2

**C.   Need for the Sentence to Reflect the Offenses' Seriousness, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public**

3   The sentence must satisfy the need to punish defendant, as well

4   as society's need to reflect the seriousness of the offense; promote

5   respect for the law; provide just punishment; afford adequate

6   deterrence; and protect the public.  18 U.S.C. § 3553(a)(2).  Here,

7   the government's recommended sentence will provide deterrence both to

8   defendant and to others who might otherwise be inclined to perpetrate

9   a similar crime.  A sentence within the Guidelines range promotes

10  respect for the law.  Finally, a term of supervised release following

11  imprisonment will provide an additional layer of deterrence and

12  protection to the community.

13  **D.   Need to Avoid Unwarranted Disparities**

14  A mid-range Guidelines sentence minimizes sentencing disparities

15  among similarly situated defendants.  As the Ninth Circuit has

16  repeatedly held, a sentence within the correctly-calculated

17  Guidelines range ensures consistency in sentencing.  See United

18  States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the

19  Guidelines range was correctly calculated, the district court was

20  entitled to rely on the Guidelines range in determining that there

21  was no 'unwarranted disparity' . . . .");  Gall v. United States, 552

22  U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was

23  clearly considered by the Sentencing Commission when setting the

24  Guidelines ranges.").  Here, under the correctly calculated

25  Guidelines range, other defendants "with similar records who have

26  been found guilty of similar conduct" as defendant can expect a

27  prison sentence between 33 and 41 months' imprisonment.  See U.S.S.G.

28  § 5A (Sentencing Table).  As such, the government's recommended

11

sentence, which is at the middle of that range, avoids an unwarranted disparity with similarly situated defendants.

## V.   ORDER FOR IMMEDIATE PAYMENT OF RESTITUTION

The government further requests the court order full and immediate restitution of the loss amount, $515,138, payable to the victim institution, EDD, and to issue an order including provisions described in subsection (D), _infra_, regarding restitution.

Immediate payment of restitution is the rule, and the Court may specify a restitution payment schedule for ongoing, periodic payments if the defendant bears her burden of demonstrating an inability to pay.  Because defendant has not attempted to meet her burden, the government requests an order for full and immediate restitution.

### A.   Payment of Restitution is the Law

Under the Mandatory Victim Restitution Act ("MVRA"), Section 3663A, the Court must order full restitution without regard to defendant's economic situation.  18 U.S.C. § 3664(f)(1)(A).

Here, defendant was convicted of wire fraud, which is an offense against property under Title 18 for purposes of § 3663A.  See 18 U.S.C. § 3663A(c)(1)(A)(ii), see also United States v. Stouffer, 986 F.2d 916, 928 (5th Cir. 1993).  Therefore, pursuant to 18 U.S.C. § 3663A, the government requests that the Court order that defendant pay the following restitution amount to the following victim:

| Victim | Address | Restitution Amount |
|---|---|---|
| California's Employment Development Department | EDD Cashiering, Benefit Recovery State of California P.O. Box 82606 Sacramento, CA 94206-0001 | $515,138 |

The government has determined this victim and loss amount from bank records, EDD records, and defendant's admissions in the plea agreement.  (Plea Agreement ¶¶ 9, 13.)

**B.   The Defendant Has Not Proven An Inability To Pay And Should Be Required To Make A Full and Immediate Payment**

    1.   The MVRA Requires Full and Immediate Restitution Unless the Defendant Bears the Burden of Showing Inability to Pay

Under the MVRA, the Court must order full and immediate payment of restitution, unless, in the interest of justice, the Court provides for payment on a date certain or in installments.  See 18 U.S.C. § 3572(d)(1).  In setting the amount and manner of restitution, the court must consider "the amount of loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a).

"Immediate payment of restitution is the general rule." See United States v. Martin, 278 F.3d 988, 1006 (9th Cir. 2002). Although "immediate repayment is the rule," the defendant may be permitted to make periodic payments if she bears her burden and proves inability to pay. United States v. Ross, 310 Fed. Appx. 160, 162 (9th Cir. 2009); see also United States v. Reaume, 338 F.3d 577, 585 (6th Cir. 2003) ("The burden is on the defendant to demonstrate that a restitution order far exceeds his resources and earning potential.")

Defendant has not proven inability to pay she has not accounted

for the $515,138 in criminal proceeds, which must be presumed to still remain in her possession; and she has agreed to immediate payment of restitution in the plea.  As a result, the Court should order immediate and full restitution.

> 2.    Defendant Is Presumed To Be In Possession of Her Criminal Proceeds

Where, as here, defendant has not accounted for the whereabouts of her criminal proceeds, it must be presumed that she still possesses those proceeds.  United States v. Boyle, 10 F.3d 485, 492 (7th Cir. 1993) (upholding $2 million restitution order because the defendant failed to account for the proceeds of his crime); United States v. Voight, 89 F.3d 1050, 1092 (3rd Cir. 1996) (where "a defendant has secreted proceeds from an illegal activity, the illegal proceeds are presumed assets of the defendant unless the defendant proves otherwise."); see also United States v. Olson, 104 F.3d 1234, 1238 (10th Cir. 1997).  Here, defendant has admitted she caused losses in the amount of $515,138, and that she was the one who withdrew the fraudulently-obtained UI benefits from ATMs.  (PSR ¶ 13).  Defendant has not provided any information on the whereabouts of the nearly half million dollars of criminal proceeds, the Court should deem those proceeds to remain among defendant's assets.

Moreover, what little information defendant did provide to the USPO indicates she may have undisclosed assets.  For one, defendant indicated that her attorney is retained, and that she is paying her attorney's fees.  (PSR ¶ 128.)  For another, defendant indicated she

has "special skills with taxes, beauty services," and "has her body sculpting certification," (PSR ¶¶ 117-118), however, she has not provided any information on what if any proceeds she receives from any related endeavors.

The Court should order immediate payment of restitution in full.

### C. If the Defendant Demonstrates an Inability to Pay, The Court Should Set a Payment Schedule

If the Court determines that defendant is unable to make immediate payment of restitution in full immediately, this Court should order the restitution "due and payable immediately" and set a payment schedule for the restitution as the Court deems appropriate. United States v. Gunning, 339 F.3d 948 (9th Cir. 2003); 18 U.S.C. § 3664(f)(1)-(3).

To order a payment schedule, the Court must first find that delaying immediate and full payment be "in the interest of justice." 18 U.S.C. § 3572(d).  The Court must also "provide[] for payment on a date certain or in installments," and set "the length of time over which scheduled payments will be made . . . [to be] the shortest time in which full payment can reasonably be made." Id.  The Court may direct the defendant make nominal periodic payments if the court finds "from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments."  18 U.S.C. § 3664(f)(3)(B).

To be sure, the existence of a payment schedule does not preclude the government from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied.  See United States v. Wycoff, 839 F.3d 581, 582 (7th Cir.2016); United States v. Hawkins, 392 F. Supp. 2d 757, 760 (W.D. Va. 2005); United States v. James, 312 F. Supp. 2d 802, 806-07 (E.D. Va. 2004). The entry of judgment constitutes a lien in favor of the United States on all property and rights to property of Defendant which the government may enforce through garnishment and all other legally available means. See 18 U.S.C. § 3613(a),(c) and (f).

**D.    Government Request for Restitution Order**

To ensure the enforcement of the mandatory restitution order, as well as all of defendant's Court-ordered financial obligations, the government respectfully requests that the Court order the following:

1) The defendant shall notify the Court of any material change in defendant's ability to pay, including without limitation any increases in wages, income, or assets.  See 18 U.S.C. § 3664(k)

2) The defendant shall apply all monies received from income tax refunds to the outstanding Court-ordered financial obligation. In addition, the defendant shall apply all monies received from lottery winnings, inheritance, judgments and any anticipated or unexpected financial gains to the outstanding Court-ordered financial obligation.

3) Defendant's criminal restitution debt will be referred to the Treasury Offset Program through the procedures set forth in 31

16

U.S.C. § § 3720A and 31 U.S.C. 3716 to offset funds otherwise payable to the defendant from any federal agency, including the Internal Revenue Service and the Social Security Administration, to apply those funds to defendant's outstanding fine or restitution balance until defendant's liability to pay any fine or restitution order has expired or been satisfied.

4) The defendant shall notify the Financial Litigation Section of the United States Attorney's Office for the Central District of California before transferring any interest in the 2018 Chevrolet Crew Pickup Truck identified in PSR ¶ 127, as well as any property, real or valued over $1,000, owned directly or indirectly by defendant, including any interest held or owned under any other name or entity, including trusts, partnership and/or corporations.

5) The United States Probation Office shall preserve and provide the Financial Litigation Section of the United States Attorney's Office for the Central District of California with all the financial documentation relied upon in the preparation of the Presentence Report, including any net worth and cash flow statements completed by the defendant.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 37 months' imprisonment, followed by a three-year period of supervised release; and a $200 special assessment.  The government also requests a restitution order

for full and immediate payment of $515,138 to the victim, EDD, which includes the provisions described _supra_ in Section V(D), or, in the alternative, a payment schedule for restitution in the amount of $515,138 at the court's determination.